IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FREDERICK STARNES, JR.,**<br><br>    Plaintiff,<br><br>  v.<br><br>**THREDUP INC.,**<br>    Defendant. | **CIVIL ACTION**<br><br>No. 22-4859-KSM |

**MEMORANDUM**

**MARSTON, J.**                                                                                                   **April 12, 2023**

Plaintiff Frederick Starnes, Jr. brings sex discrimination claims against his former employer, Defendant ThredUP Inc. under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. & Cons. Stat. § 955. (*See* Doc. No. 1.) ThredUP moves to dismiss the Complaint in its entirety. (Doc. No. 8.) For the reasons discussed below, that motion is granted.

**I.      BACKGROUND**

Viewing the allegations in the Complaint as true, the relevant facts are as follows.

Starnes worked as an Area Manager at ThredUP from November 29, 2021 until March 4, 2022. (Doc. No. 1 at ¶ 7.) On February 25, 2022, Starnes met with Managers Greg Wicklem and Angelo Figueroa about an incident involving one of Starnes's subordinates, a woman named Sheika Brown. (*Id.* at ¶ 8.) According to the Complaint, Brown had filed a case against a fellow employee, Joseph Smith, and as part of that case, Brown claimed that she told Starnes that she was "being bothered by Joe." (*Id.*) During the February 25 meeting, Starnes confirmed that Brown had told him as much and that he had responded by asking her how she was "being bothered." (*Id.*) Brown told him that "Joe was making 'smart comments' to her." (*Id.*) Starnes

conceded that he "took no action" in response to Brown's complaint, but he explained that it was because Brown had "not seem concerned" during their conversation and because he had often observed Brown and Smith "routinely being playful" with one another.  (*Id.*)  After hearing Starnes's explanation, Wicklem issued a "verbal warning" and told Starnes that "if in the future something like this happens again, [he] will be terminated."  (*Id.*)  Wicklem also told Starnes that if Brown approached him again about her issues with Smith, Starnes should tell her to contact Human Resources ("HR").  (*Id.*)

The next day, ThredUP's HR Business Partner, Shaylin Hess, asked Starnes similar questions and ended the conversation by reiterating that if Brown complained to him again, she should be told to go directly to HR.  (*Id.* ¶ 10.)

On March 4, 2022, Wicklem and Hess met with Starnes a third time.  (*Id.* at ¶ 11.)  Wicklem told Starnes that his version of events was "inconsistent" with Brown's, in that Brown claimed she spoke with Starnes multiple times about Smith's harassment.  (*Id.*)  Wicklem also told Brown that he had copies of a "sexual harassment email" that was sent to Starnes in November 2021.  (*Id.*)  Although the Complaint provides little description of the email, it seems to have been about mandatory sexual harassment training that Starnes failed to complete.  (*See id.* ¶ 12 ("[I]t is possible that Mr. Starnes did not see the November email referred to by Greg.  However, Mr. Starnes had several one-on-one meetings with Greg and *the sexual harassment training* was never brought up.  Moreover, Mr. Starnes was never informed by defendant that it was mandatory to complete sexual harassment training.") (emphasis added).)  Starnes tried to respond to these allegations, but Wicklem cut him off, stating "there is nothing more to discuss" and told Starnes to turn in any company property in his possession.  (*Id.* at ¶ 11.)

After his termination, Starnes filed a charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC") and received a notice of right to sue. (*Id.* ¶ 6.)[1] On December 7, 2022, Starnes filed this action, claiming that his termination constitutes discrimination based on his gender in violation of Title VII and the PHRA. (*See generally id.*) ThredUP moves to dismiss the Complaint in its entirety, under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 8.) Starnes opposes that motion. (Doc. No. 13.)

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that although a plaintiff does not need to include "detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must "provide the grounds of his entitlement to relief" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action") (quotation marks omitted).

## III.   DISCUSSION

ThredUP argues that Starnes had failed to state a claim for gender discrimination under either the Title VII or the PHRA because he has not put forth any facts that give rise to the inference that he was terminated because of his gender. (Doc. No. 8 at 8.)

Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national

---

[1] It is unclear when Starnes filed the charge or received the notice of right to sue. It is also unclear from the Complaint whether Starnes has exhausted administrative remedies under the PHRA. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) ("A plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief.").

origin." 42 U.S.C. § 2000e-2(a)(1).  The PHRA similarly makes it "an unlawful discriminatory practice . . . [f]or an employer because of the race, color, religious creed, ancestry, age, sex, national origin, or non-job related handicap or disability . . . of any individual . . . to discharge from employment such individual."  43 Pa. Stat. & Cons. Stat. § 955(a).  The two claims are "governed by essentially the same legal standard," and for that reason, the Court analyzes them together.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 n.8 (3d Cir. 2016).

To state a claim for disparate treatment gender discrimination, Starnes must allege facts tending to suggest that:  "(1) [ ]he belongs to a protected class; (2) [ ]he was qualified for the position [that he held]; (3) [ ]he suffered an adverse employment action despite being qualified; and (4) the adverse employment action occurred under circumstances that could give rise to an inference of discrimination."  *Mahan v. City of Philadelphia*, 296 F. Supp. 3d 712, 719 (E.D. Pa. 2017); *see also, e.g.*, *Warfield v. SEPTA*, 460 F. App'x 127, 129–30 (3d Cir. 2012) (explaining at summary judgment that a plaintiff must satisfy these four elements to makes out a prima facie case of sex discrimination).  At this stage, Starnes does not have to put forth evidence of a prima facie case, but to survive dismissal, his allegations must give rise to "a reasonable expectation that discovery will reveal evidence" of these elements.  *Connelly*, 809 F.3d at 789 (cleaned up).  The parties do not dispute that he has satisfied this burden as to the first three elements.  Instead, ThredUP argues that Starnes's claim fails on the fourth element.  (Doc. No. 8.)

To claim that his termination "occurred under circumstances that could give rise to an inference of discrimination," Starnes must allege facts tending to show either (1) that "similarly situated" female employees "were treated more favorably," or (2) that there is a "causal nexus" between his gender and his termination.  *Greene v. V.I. Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014).  Starnes concedes that he has not identified any female comparators.  (Doc.

4

No. 13-2 at 1 n.1.)  Accordingly, the only question for the Court is whether Starnes has alleged facts that suggest a "causal nexus" between his sex and his termination.  He has not.

An inference of discrimination can be "supported in a number of ways, including, but not limited to, comparator evidence, evidence of similar [gender] discrimination of other employees, or direct evidence of discrimination from statements or actions by [ ] supervisors suggesting [sex-based] animus."  *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010).  As stated above, Starnes concedes that he has made no allegations of comparators.  The Complaint also lacks any allegations that other male employees were discriminated against or that Starnes was subjected to gender-related slights or comments.  *See Bellamy v. Waterfront Square Condos. & Spa*, Civil Action No. 12–6618, 2013 WL 2333399, at *4 (E.D. Pa. May 29, 2013) (finding the plaintiff's complaint failed to "allege sufficient facts" of a causal nexus where she alleged "that she," unlike a male employee, "was denied the purchase and dry cleaning of her work clothes," but failed to allege that those were benefits of employment to which she was entitled and alleged that "she only witnessed the termination of female employees," but failed to allege that their terminations were unjustified or that "male employees were not fired (she alleges only that she did not herself witness the termination of male employees)").

Starnes argues that he has alleged facts that tend to show he was fired because of "illegal sex stereotyping."  (Doc. No. 13 at 4.)  In particular, he points to an incident that occurred a few weeks before his termination where an unidentified employee made "inappropriate comments" to two unidentified female employees.  (Doc. No. 1 ¶ 13.)  Starnes alleges that he properly handled this situation by summoning the offending employee to a meeting with HR and explaining why the comments were inappropriate.  (*Id*.)  After the meeting, Thredup's Regional Director, Kristie Yesilonis, told Starnes that he "handled [the situation] very well and should conduct speeches on

5

sexual harassment and dating in the workplace." (*Id.*)

Starnes argues that this incident shows he was fired for "illegal sex stereotyping," i.e., the belief that men "do not consider to constitute [sic] sexual harassment actions and conduct that females do." (*Id.*) Starnes reasons that because Yesilonis previously complimented him on his handling of a sexual harassment complaint, it shows that he takes complaints of harassment seriously, and therefore, his termination must have been the result of the incorrect belief that he, as a man, ignored sexual harassment. (*Id.*) The problem with this logic is that Starnes admits he did not report his conversation with Brown to HR and that he failed to complete the sexual harassment training sent in the November email. (*See id.* ¶¶ 8, 12.) In other words, Starnes concedes that the reasons given for his termination by Wicklem and Hess are *true*. *Contra. Sassaman v. Gamache*, 566 F.3d 307, 312–14 (2d Cir. 2009) (finding an inference of discrimination where the male plaintiff was fired after a female employee brought sexual harassment claims against him and the plaintiff's supervisor failed to properly investigate the harassment charges and told the plaintiff that he "probably did what [she] said you did because you're male").

Starnes has not alleged that Wicklem and Hess improperly investigated the issue or made comments to suggest invidious sex stereotyping was the actual reason for his dismissal. *See Hobson v. St. Luke's Hosp. & Health Network*, 735 F. Supp. 2d 206, 217 (E.D. Pa. 2010) ("[U]nlike plaintiff Hobson's Complaint, the complaint in *Sassaman* provided factual support for plaintiff Sassaman's assertion of gender stereotyping by his supervisor, defendant Gamache. . . . Here, by comparison, plaintiff Hobson neither raised discriminatory gender stereotyping expressly nor through pleading facts, like those present in *Sassaman*, in his Amended Complaint to support a reasonable inference that defendant engaged in prohibited gender stereotyping.")

(quoting *Sassaman*, 566 F.3d 307); *see also, e.g.*, *Heilman v. Memeo*, 359 F. App'x 773, 776 (9th Cir. 2009) ("Heilman has not shown that similarly situated individuals outside her protected class were treated more favorably.  She contends that she need not produce such evidence because her employer discriminated against her pursuant to an unwritten policy that only applied to women and embodied invidious sex stereotypes.  While evidence of such a policy could be sufficient to make out a prima facie case of sex discrimination, Heilman has failed to offer facts in support of her contentions."); *Hooker v. Hilton Hotels Corp.*, Civil Action No. ELH–10–3019, 2012 WL 2798768, at *15 (D. Md. July 6, 2012) ("Here, plaintiff cannot demonstrate that [his supervisor's] investigation [of the sexual harassment allegations against the plaintiff] supports an inference of discriminatory intent.  Even if [the] investigation of the incident was somehow unfair to [the plaintiff], this would not amount to a cognizable Title VII claim unless plaintiff could present some direct or circumstantial evidence that the unfairness of the investigation was gender-based.  Nor has plaintiff identified any evidence that would permit a jury to infer that [the supervisor's] termination decision was based on a sex stereotype.").  *Contra. Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (holding that "stereotypical remarks about the incompatibility of motherhood and employment can certainly be *evidence* that gender played a part in an employment decision") (quotation marks omitted); *Sassaman*, 566 F.3d at 312.

At bottom, Starnes alleges that he was terminated because he, admittedly, failed to respond to a female subordinate's claims that a male coworker was harassing her and because he failed to complete mandatory sexual harassment training.  Although Starnes believes his actions should have been excused in both instances—in the first, because he believed Brown was unconcerned with Smith's actions, and in the second, because he does not remember seeing the

email about training—those allegations suggest, at most, that Starnes does not believe his actions warranted termination. They do not suggest that Starnes was terminated because of his gender. *Cf. Hobson*, 735 F. Supp. 2d at 216 ("I conclude that plaintiff's averments that his employment was terminated two days after he was questioned by hospital administrators about an allegation of sexual harassment of a nurse and five days after receiving a call from a police officer requesting plaintiff to leave the nurse alone are insufficient to give rise to a reasonable inference that plaintiff was fired because he is a male. Plaintiff's gender is not reasonably implicated as the cause of the phone call from the police, the plaintiff's questioning by the hospital administrators, or his ultimate termination."). Accordingly, the Court is left with Starnes's "subjective belief that [his gender] played a role" in the decision to fire him, and that alone is not "sufficient to establish and inference of discrimination." *Wilson v. Blockbuster, Inc.*, 571 F. Supp. 2d 641, 647 (E.D. Pa. 2008); *see also Bell Atlantic Corp.*, 550 U.S. at 555 (To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level.").

## IV. CONCLUSION

For the reasons discussed above, the motion to dismiss is granted. Starnes may file an amended complaint if he can, in good faith, cure the deficiencies identified in this Memorandum.