IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FREDERICK STARNES, JR.,** | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | No. 22-4859-KSM |
| **THREDUP INC.,** | |
| Defendant. | |

<u>MEMORANDUM</u>

**MARSTON, J.**                                                                                                           **July 10, 2023**

Plaintiff Frederick Starnes, Jr. brings sex discrimination claims against his former employer, Defendant ThredUP Inc. under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. & Cons. Stat. § 955. (*See* Doc. No. 19.) ThredUP moves to dismiss the Amended Complaint in its entirety. (Doc. No. 22.) For the reasons discussed below, that motion is denied.

**I.    BACKGROUND**

Viewing the allegations in the Amended Complaint as true, the relevant facts are as follows.

Starnes worked as an Area Manager at ThredUP from November 29, 2021 until March 4, 2022. (Doc. No. 19 at ¶ 7.) On February 25, 2022, Starnes met with Managers Greg Wicklem and Angelo Figueroa about an incident involving one of Starnes's subordinates, a woman named Sheika Brown. (*Id.* at ¶ 8.) According to the Amended Complaint, Brown had filed a case against Joseph Smith, an Operations Supervisor for ThredUP, and as part of that case, Brown claimed that she told Starnes that she was "being bothered by Joe." (*Id.*) During the February 25 meeting, Starnes confirmed that Brown had told him as much and that he had responded by

asking her how she was "being bothered." (*Id.*) Brown told him that "Joe was making 'smart comments' to her." (*Id.*) Starnes "took no action" in response to Brown's complaint, which he claimed was because Brown had "not seem concerned" during their conversation and because he had often observed Brown and Smith "routinely being playful" with one another and "making inappropriate sex-tinged statements to each other." (*Id.*) After hearing Starnes's explanation, Wicklem issued a "verbal warning" and told Starnes that "if in the future something like this happens again, [he] will be terminated." (*Id.*) Wicklem also told Starnes that if Brown approached him again about her issues with Smith, Starnes should tell her to contact Human Resources ("HR"). (*Id.*)

The next day, ThredUP's HR Business Partner, Shaylin Hess, asked Starnes similar questions and ended the conversation by reiterating that if Brown complained to him again, she should be told to go directly to HR. (*Id.* at ¶ 10.)

On March 4, 2022, Wicklem and Hess met with Starnes. (*Id.* at ¶ 11.) Wicklem told Starnes that his version of events was "inconsistent" with Brown's, in that Brown claimed she spoke with Starnes multiple times about Smith's harassment. (*Id.*) Wicklem also told Brown that he had copies of a "sexual harassment email" that was sent to Starnes in November 2021. (*Id.*) The email seems to have been about mandatory sexual harassment training that Starnes failed to complete. (*See id.* at ¶ 12 ("An Area Manager can receive hundreds of emails on any given shift. Thus, it is possible that Mr. Starnes did not see the November email referred to by Greg. However, Mr. Starnes had several one-on-one meetings with Greg and *the sexual harassment training* was never brought up in any respect, which Mr. Starnes interpreted as meaning that not taking the training did not warrant disciplinary action much less termination. Moreover, Mr. Starnes was never informed by defendant that it was mandatory to complete

2

sexual harassment training.") (emphasis added).)  Starnes tried to "explain what had occurred," but Wicklem cut him off, stating "there is nothing more to discuss" and told Starnes to turn in his company property.  (*Id.* at ¶ 11.)

According to the Amended Complaint, ThredUP interviewed a female candidate to replace Starnes before he was terminated.  (*See id.* at ¶ 18.)  Then shortly after Starnes's termination, he was replaced by a female supervisor.  (*Id.*)  The Amended Complaint alleges that Starnes was told after his termination "that he was terminated because defendant had 'one too many' male supervisors," yet does not identify who informed Starnes of this.  (*Id.*)  After Starnes's termination, Wicklem and Hess requested that male supervisors with whom Starnes worked turn over their cell phones so that they could determine whether Starnes had contacted them.  (*Id.* at ¶ 19.)  Female supervisors were not asked to do the same.  (*Id.*)

After his termination, Starnes filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a notice of right to sue.  (*Id.* ¶ 6.)[1]  On December 7, 2022, Starnes filed this action, claiming that his termination constitutes discrimination based on his gender in violation of Title VII and the PHRA.  (*See generally* Doc. No. 1.)  On February 15, 2023, ThredUP moved to dismiss the Complaint in its entirety (Doc. No. 8), which the Court granted on April 12 (Doc. Nos. 17, 18).  On April 25, Starnes filed an Amended Complaint (Doc. No. 19), and on May 16, ThredUP filed a motion to dismiss the Amended Complaint in its entirety (Doc. No. 22).  Starnes opposes the motion (Doc. No. 24),[2] to

---

[1] As the Court noted in its April 25, 2023 Memorandum on ThredUP's first motion to dismiss, it is unclear when Starnes filed the charge or received the notice of right to sue.  It is also unclear from the Complaint whether Starnes has exhausted administrative remedies under the PHRA.  *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) ("A plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief.").

[2] Plaintiff's response to Defendant's motion was originally due on May 30—14 days after the motion was filed on May 16.  *See* Loc. R. Civ. P. 7.1 (a party must respond to a motion to dismiss within 14 days of

which ThredUP filed a reply (Doc. No. 25).  The Court held oral argument on June 28, 2023.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that although a plaintiff does not need to include "detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must "provide the grounds of his entitlement to relief" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action") (quotation marks omitted).

## III.    DISCUSSION

ThredUP argues that Starnes fails to state a claim for reverse gender discrimination under either the Title VII or the PHRA.  (Doc. No. 22-1 at 8.)

Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The PHRA similarly makes it "an unlawful discriminatory practice . . . [f]or an employer because of the race, color, religious creed, ancestry, age, sex, national origin, or non-job related handicap or disability . . . of any individual . . . to discharge from employment such individual."  43 Pa. Stat. & Cons. Stat. § 955(a).  The two claims are "governed by essentially the same legal standard," and for that reason, the Court analyzes them

---

filing, or the motion may be granted as uncontested).  But Plaintiff failed to file a response by that deadline.  On June 5, the Court *sua sponte* granted Plaintiff a brief extension to respond to Defendant's motion, warning Plaintiff that if he failed to do so, his claims could be dismissed.  (Doc. No. 23.)  Plaintiff filed his opposition on June 9.  (Doc. No. 24.)

4

together.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 n.8 (3d Cir. 2016).

To state a claim for disparate treatment gender discrimination, Starnes must allege facts tending to suggest that:  "(1) [ ]he belongs to a protected class; (2) [ ]he was qualified for the position [that he held]; (3) [ ]he suffered an adverse employment action despite being qualified; and (4) the adverse employment action occurred under circumstances that could give rise to an inference of discrimination."  *Mahan v. City of Philadelphia*, 296 F. Supp. 3d 712, 719 (E.D. Pa. 2017); *see also, e.g.*, *Warfield v. SEPTA*, 460 F. App'x 127, 129–30 (3d Cir. 2012) (explaining at summary judgment that a plaintiff must satisfy these four elements to makes out a prima facie case of sex discrimination).  At this stage, Starnes does not have to put forth evidence of a prima facie case, but to survive dismissal, his allegations must give rise to "a reasonable expectation that discovery will reveal evidence" of these elements.  *Connelly*, 809 F.3d at 789 (cleaned up).  ThredUP again argues that Starnes's claim fails on the fourth element.  (Doc. No. 22-1 at 8.)

To claim that his termination "occurred under circumstances that could give rise to an inference of discrimination," Starnes must allege facts tending to show either (1) that "similarly situated" female employees "were treated more favorably," or (2) that there is a "causal nexus" between his gender and his termination.  *Greene v. V.I. Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014); *see also Bird v. Mastery Charter Schs.*, Civil Action No. 21-cv-747, Civil Action No. 21-cv-3239, 2022 WL 1773673, at *7 (E.D. Pa. June 1, 2022) ("There are several ways a plaintiff can satisfy this element.  One way is by asserting that she was treated less favorably than similarly situated employees outside of the protected class . . . .  Alternatively, a plaintiff can rely on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." (cleaned up)).

1. **<u>Comparators</u>**

Starnes conceded in his original Complaint that he had not identified any female comparators.[3] (Doc. No. 13-2 at 1 n.1.) In an apparent attempt to remedy this defect, Starnes added the following allegation to his Amended Complaint:

> Defendant discriminated against Mr. Starnes because of his gender, as it had discriminated against other male supervisors. For example, salaried supervisors were assigned to work 12-hour shifts. However, the female supervisor of Nick, a salaried male supervisor, regularly required him to work 14-hour shifts, but did not require her female salaried subordinate supervisors to work more than their 12-hour shifts.

(Doc. No. 19 at ¶ 16.) But this allegation fails to show that female employees were treated *more favorably than Starnes* or that those female employees were *similarly situated to Starnes*.

"While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in 'all relevant aspects.'" *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222–23 (3d Cir. 2009) (citation omitted). "To determine if another employee is similarly situated to the plaintiff, courts consider: (1) whether the employee had the same supervisor; (2) whether the employees were subjected to the same standards; and (3) whether the employees 'engaged in similar conduct without such differentiating or mitigating circumstances as would

---

[3] Here, too, Starnes concedes that the allegations contained in paragraph 16 of his Amended Complaint are not necessarily evidence of comparators, but rather, circumstantial evidence of a causal nexus between his gender and his termination. (*See* Doc. No. 24-2 at 2 ("Defendant contends that the allegations of paragraph 16 are irrelevant because they do not establish that the female supervisors referred to therein are Mr. Starnes's comparators. Defendant completely misses the point. The allegations of paragraph 16 are evidence of a culture and/or pattern of discrimination against male supervisors in Defendant's workplace. That is, that Mr. Starnes worked in an environment where female supervisors were treated differently and better than male supervisors. Defendant incorrectly construes the allegations of paragraph 16 as an effort to establish female comparators[.]"). At the hearing, Starnes clarified that although he is not bringing a traditional "pattern and practice claim," he believes the allegations in paragraph 16 speak to a widespread culture of sex discrimination at ThredUP relevant to his disparate treatment claim. (*See* Draft Hr'g Tr. at 14:15–15:14; 19:18–20:17; *see also id.* at 8:10–12 ("And [paragraph 16] establishes just a general treatment of male supervisors differently than female supervisors.")). But Starnes fails to draw a causal connection from these events to the decision about his termination, and so the Court finds that the allegations contained in paragraph 16 are insufficient on this basis as well.

distinguish their conduct or the employer's treatment of them.'" *Purnell v. City of Philadelphia*, Civil Action No. 20-3718, 2021 WL 3617161, at *5 (E.D. Pa. Aug. 16, 2021) (citation omitted); *see also Bird*, 2022 WL 1773673, at *7 ("Demonstrating that employees are similarly situated often includes a 'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" (quoting *Opsatnik*, 335 F. App'x at 223)).

Starnes argues that it is "irrelevant whether the female supervisors were Area Managers" because it is "sufficient that they were supervisors." (Doc. No. 24-2 at 2–3.) Starnes also argues that it is "irrelevant whether the female supervisors and Mr. Starnes report[ed] to the same supervisors" (*id.* at 3), and that Defendant "misses the point" by arguing that "the allegations do not show that the female supervisors and Mr. Starnes engaged in similar conduct" (*id.*). But these facts are indisputably relevant to the Court's analysis. *See Purnell*, 2021 WL 3617161 at *5; *Fennell v. Comcast Cable Commc'ns Mgmt., LLC*, No. CV 19-4750, 2022 WL 4296690, at *12 (E.D. Pa. Sept. 16, 2022) ("A determination as to whether an employee is 'similarly situated' generally takes into account the job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace."); *see also Mandel*, 706 F.3d at 170 ("An employee who holds a different job in a different department is not similarly situated."). Here, Starnes fails to allege any facts indicating that other female employees had the same supervisors as him, had the same job title or job duties and responsibilities as him, were subjected to the same standards, and engaged in the same conduct as him (failing to report a sexual harassment complaint), but were not fired. In short, he has failed to allege that he and any other female ThredUP employee were similarly situated in "all relevant aspects" but nonetheless

7

treated differently.  (*See* Draft Hr'g Tr. at 8:13–16 (Starnes conceding that he has not presented a proper female comparator); *see also id.* ("There is no doubt that there is no exact comparator to Mr. Starnes, meaning there is no female supervisor who did not act on a complaint of sexual harassment brough to her attention and who did not attend sexual harassment training[.]").)

As for Starnes's allegation that a female supervisor made Nick, a male supervisor, work 14-hour shifts but did not make her subordinate female supervisors work more than 12-hour shifts, that is entirely irrelevant to Starnes's claim.  The complaint is devoid of any allegations that Starnes shared the same supervisor as Nick and Nick's female counterparts (to the contrary, Starnes pleads his direct supervisor was Antonio Figueroa, a man (*see* Doc. No. 19 at ¶ 11), while Nick's supervisor, and that of the subordinate female supervisors who worked 12-hour shifts, was a female).  Likewise, the complaint is devoid of any allegation that those subordinate female supervisors shared the same job duties as Starnes, engaged in the same conduct as Starnes, or were otherwise somehow similarly situated to Starnes in "all relevant aspects."  While the allegation may show that *Nick* was treated differently than his female counterparts, it has no bearing on *Starnes's* claim.[4]

For these reasons, the Court concludes that Starnes has failed to establish an inference of discrimination by the first means—i.e., he has failed to establish an inference of discrimination by alleging facts tending to show that he had female comparators who were treated more

---

[4] The following allegation is unavailing for the same reason:  "That defendant terminated Mr. Starnes because of his gender is further evidenced by the fact that after his termination, Mr. Wicklem and Ms. Hess requested that male supervisors with whom Mr. Starnes worked give them their cell phones to determine whether Mr. Starnes had contacted them.  In contrast, they did not make a similar request of female supervisors with whom Mr. Starnes worked.  Upon information and belief, Mr. Wicklem and [Ms. Hess] did so to ensure that male supervisor would not provide any evidence of gender discrimination to Mr. Starnes."  (Doc. No. 19 at ¶ 19; Doc. No. 24-2 at 5–6.)  Namely, this has no bearing on whether *Starnes* was treated differently than those female supervisors or whether the female supervisors were similarly situated to him.

favorably than him. *See, e.g.*, *Hobson v. St. Luke's Hosp. & Health Network*, 735 F. Supp. 3d 206, 215 (E.D. Pa. 2010) ("Despite the opportunity given plaintiff in my prior Opinion, plaintiff failed to provide additional factual assertions showing how he and Nurse Stettner—or any other female employee of defendant for that matter—were similarly situated but differently treated. For example, plaintiff has not pled facts supporting a reasonable inference that he filed a sexual harassment complaint (or any other complaint) with management against Nurse Stettner and that his complaint was either rejected or ignored while Nurse Stettner's (or another female employee's) complaint was pursued.  Moreover, plaintiff pled no facts showing that any past harassment complaints against Nurse Stettner, if any were filed, or any other female employee were handled differently than the claim against plaintiff.  Furthermore, plaintiff has not pled sufficient facts regarding his and Nurse Stettner's employment duties, the supervisors to whom they reported, or other work-related circumstances to support a reasonable inference that they were similarly situated."); *Prince v. Trumark Fin. Credit Union*, Civil Action No. 22-3097, 2022 WL 10584444, at *4 (E.D. Pa. Oct. 18, 2022) ("Mr. Prince repeatedly argues his employer did not discipline minority employees for their improper behavior.  But Ms. Johnson and Mya cannot be a comparator for Mr. Prince because they are his subordinates which prevents them from being 'similarly situated in all relevant aspects.'  They cannot be comparators because they do not hold the same job as Mr. Prince.  These alleged comparators also did not engage in similar conduct as Mr. Prince.  Ms. Johnson pressured a co-worker to return bank fees on her boyfriend's account; Mya berated a Trumark Financial customer; and, Mr. Prince engaged in supervisorial management of minority employees.  We are persuaded by the reasoning of Judges O'Neill and Schmehl in dismissing complaints when the allegedly discriminated employee fails to allege enough facts to consider the employee's comparators."); *Butto v. CJKant Resource*

*Grp.*, No. 5:18-cv-01210, 2019 WL 1147580, at *2 (E.D. Pa. Mar. 13, 2019) ("[A]lthough the Amended Complaint alleges that Kantner neither expected nor required similarly situated female executives to be complicit in his infidelity, none of the female executives, who each had different job titles and worked in different areas, are in fact similarly situated to Butto."); *see also Purnell*, 2021 WL 3617161, at *5–6 (finding that the plaintiff had failed to plead an inference of discrimination where the complaint did not "state whether the 'comparators' had the same supervisors, were subject to the same standards, or engaged in the same conduct as [the plaintiff]" and noting that "[b]eyond conclusory allegations, [the] Complaint does not include any facts that establish the unnamed comparators were similarly situated to [the plaintiff]"). *Contra Bird*, 2022 WL 17773673, at *3 (finding that the plaintiff had adequately pled that she was treated less favorably than her similarly situated white co-workers where she alleged that "Vollmer and Beigert, who were both white, were similarly situated to her because they all managed food service accounts for Mastery. While Plaintiff held the title of RRM and her coworkers were RM's, the allegations in the Amended Complaint indicate that this difference in titles did not alter their job responsibilities in any meaningful way"); *Rodriguez v. Wendover, Inc.*, Civil Action No. 20-620-CFC, 2021 WL 2117205, at *2–3 (D. Del. May 25, 2021) (holding that the plaintiff, a Wendy's manager who was terminated for closing her store early, pleaded at least one circumstance giving rise to an inference of discrimination where she "alleged that two male managers, one at her store and one at another location, both closed their stores early and were not disciplined").

### 2. **Causal Nexus**

Next, the Court considers whether Starnes has alleged facts that suggest a "causal nexus" between his sex and his termination. An inference of discrimination can be "supported in a

number of ways, including, but not limited to, comparator evidence, evidence of similar [gender] discrimination of other employees, or direct evidence of discrimination from statements or actions by [ ] supervisors suggesting [sex-based] animus." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010). As stated above, Starnes has not pleaded any comparators. The Amended Complaint also lacks any allegations that Starnes was subjected to gender-related comments by his supervisors or decision-makers. Rather, Starnes merely alleges that "female employees, including [his subordinate] Ms. Brown, regularly asked [him] whether he had obtained employment at [ThredUP], where female employees outnumbered male employees, in order to find a girlfriend." (Doc. No. 19 at ¶ 17.) Starnes argues that his general reference to "female employees" in paragraph 17 should be broadly construed to include both subordinates *and* supervisors, and that his reference to Brown's comment was just one example of the comments he endured from multiple unidentified employees.[5] (Doc. No. 24-2 at 4 ("Defendant assumes incorrectly that the term 'employees' means 'subordinate,' but Mr. Starnes clearly did not allege that only one 'employee' made gender-related statements to him.").) But Starnes has not set out any facts to demonstrate that anyone other than Brown made comments about his gender, and he cannot rely on the Court to make inferences from unspecified comments made by unknown individuals from his vague and unsupported claims.[6] *See Morse v. Lower Merion Sch.*

---

[5] Starnes's allegation that other unnamed female employees asked him the same question does not help because, according to his own allegations, his supervisors are male. (*See id.* at ¶ 11 ("Mr. Figueroa, Mr. Starnes's director supervisor, was not present during the meeting."); *see also id.* at ¶ 8 (alleging that Mr. Wicklem gave me a verbal warning).) And to the extent Hess, a woman, was a decisionmaker (*see id.* at ¶ 11 (alleging that Wicklem and Hess were present at the meeting in which Starnes was terminated)), Starnes has *not* pleaded that Hess ever asked him if he was trying to get a girlfriend at ThredUP or otherwise alluded to him having gendered motivations for working there.

[6] Starnes alleges that he was told after his termination that ThredUP had "one too many male supervisors" (Doc. No. 19 at ¶ 18), but failed to specify in his Amended Complaint who, exactly, made this comment. Starnes now clarifies in his opposition brief that this comment "was made by Joseph Smith, defendant's then Operations Manager, who certainly was in a position to know what he was talking about, to an employee who in turn related the information to Mr. Starnes." (Doc. No. 24-2 at 4–5.) But Starnes is not

11

*Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss."); *see also Irwin v. Fry Commc'ns, Inc.*, No. 1:21-CV-00186, 2021 WL 5756386, at *2 (M.D. Pa. Aug. 17, 2021), *report and recommendation adopted*, No. 1:21-CV-00186, 2021 WL 5757335 (M.D. Pa. Sept. 11, 2021) ("A court need not assume that a plaintiff can prove facts that the plaintiff has not alleged." (cleaned up)); *Goodson v. Maggi*, No. CIV.A. 08-44, 2011 WL 3236067, at *11 (W.D. Pa. July 6, 2011), *report and recommendation adopted*, No. CIV.A. 08-44, 2011 WL 3240519 (W.D. Pa. July 28, 2011) ("Plaintiff cannot rely on unsupported speculation to state a plausible claim for relief under *Twombly*.")

Further, Starnes argues that Brown's lone comment can sufficiently establish a causal nexus, because "no case establishes a requirement that gender-related comments must be made by supervisors or decision-makers in order to be relevant to establishing a prima facie case of discrimination." (Doc. No. 24-2 at 4.)  But again Starnes is mistaken.[7]  It is well-established in the Third Circuit that "stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509,

---

permitted to plead new facts in his response to a motion to dismiss. *See Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under … 12(b)(6)"); *Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").  For this reason, the Court will not attribute this statement to Smith, nor will we consider it in conjunction with the alleged discriminatory statement made by Brown.

[7] Starnes argues that evidence of sex-based comments being made pervasively in the workplace, whether they were made by decisionmakers or coworkers, is sufficient to establish a prima facie case. (*See* Draft Hr'g Tr. at 15:5–8 ("But if the comments of employees in the workplace indicate that that environment is one where discriminatory statements are commonplace, that helps establish discrimination.").)  The Court acknowledges that "discriminatory comments made by non-decision-makers, or statements temporally remote from the decision at issue, may properly be used to build a circumstantial case of discrimination." *Briggs v. Temple Univ.*, 339 F. Supp. 3d 466, 491 (E.D. Pa. 2018).  But the Court is not convinced that here a single comment made by a subordinate is enough to build such a circumstantial case.

545 (3d Cir. 1992); *Golod*, 403 F. App'x at 702 n.2 ("Such an inference could by supported [by] … direct evidence of discrimination from statements or actions *by her supervisors* suggesting racial animus." (emphasis added)); *see also Weightman v. Bank of New York Mellon Corp.*, 772 F. Supp. 2d 693, 707 (W.D. Pa. 2011) ("As a general rule, a single stray comment, made outside the context of the decision-making process, does not constitute direct evidence of discrimination."); *Selvato v. SEPTA*, 143 F. Supp. 3d 257, 269 (E.D. Pa. 2015), *aff'd*, 658 F. App'x 52 (3d Cir. 2016) ("The two remarks made by Stevens in 2012 are insufficient not only because Stevens was not a decision-maker, but also because they were made weeks before her termination and there is no evidence that the decision-makers had any knowledge of Stevens' comments."). In fact, the case that Starnes cites in his opposition brief, *Jarmon v. Trader Joe's Co.*, No. CV 21-3889, 2023 WL 2402874 (E.D. Pa. Mar. 8, 2023), clearly states this exact principle: "Similarly, the different acts and comments by coworkers are stray remarks and incidents that do not carry much weight given that said coworkers were not decision-makers." *Id.* at *5.

Starnes has also failed to plead any facts that would connect Brown's comment to his termination. *See Emerson v. Stern & Eisenberg, P.C.*, No. CV 21-3096, 2022 WL 10208548, at *5 (E.D. Pa. Oct. 17, 2022) ("Plaintiff does not allege any causal link between these comments and the determination to lay Plaintiff off. Plaintiff does not allege any date or date range that these comments occurred, identify who made the comments, or allege that the comments occurred during the time in which her workload was increased or when Plaintiff was fired. Without alleging facts that connect the discriminatory behavior with the employment decision at issue, Plaintiff's claim of discrimination on the basis of sexual orientation and gender due to discriminatory animus also fails."). In short, the allegations contained in paragraph 17 of the

Amended Complaint are insufficient to support an inference of discrimination.

Also, Starnes's allegations that Wicklem and Hess "did not conduct a fair or equitable investigation of the circumstances that ultimately resulted in [his] termination" and that their "failure to conduct a fair and equitable investigation was motivated by defendant's intention to replace Mr. Starnes with a female supervisor" are conclusory and unsupported by factual allegations.[8]  (*See* Doc. No. 19 at ¶ 18.)  Critically, Starnes concedes that the non-discriminatory reasons given for his termination are *true*; namely, he admits he failed to report his conversation with Brown to HR and admits he did not complete the sexual harassment training.  (*See id.* at ¶¶ 8, 12.)  *Contra Sassaman v. Gamache*, 566 F.3d 307, 312–14 (2d Cir. 2009) (finding an inference of discrimination where the male plaintiff was fired after a female employee brought sexual harassment claims against him and the plaintiff's supervisor failed to properly investigate the harassment charges and told the plaintiff that he "probably did what [she] said you did because you're male").

Despite the above analysis, the Court cannot conclude that dismissal is warranted here. ThredUP's motion to dismiss fails to address Starnes's allegation that ThredUP "had begun interviewing a female candidate to replace Mr. Starnes *prior to his termination*."[9]  (Doc. No. 19 at ¶ 18.)  (*See* Doc. No. 22-1 at 13 (defendant only addressing the allegations that someone told

---

[8] Starnes's allegation that Wicklem and Hess "refused to listen to Mr. Starnes's explanation of what had occurred between Ms. Brown and Mr. Smith, including particularly the history of inappropriate comments they made to each other" (*see* Doc. No. 19 at ¶ 18) is undermined by other contradictory allegations in his Amended Complaint.  (*See id.* at ¶ 8 (alleging that Starnes replied to Wicklem and Figueroa's questions by telling them about Brown's complaint and explaining to them that he took no action because of Brown's and Smith's history); *id.* at ¶ 10 (alleging that Hess asked Starnes similar questions as to those Wicklem asked him the previous day).)

[9] ThredUp addressed this allegation at the hearing and argued that simply because ThredUp "interviewed someone who happens to be a female . . . doesn't move the needle in any direction." (*See* Draft Hr'g Tr. at 7:5–7.)  But this argument is, as discussed within, unsupported by the law before the Court.

14

Starnes that ThredUP terminated Starnes because "it had one too many male supervisors" and that Starnes was replaced by a female); Doc. No. 24-2 at 5 ("Significantly, defendant failed to address the import of the allegations of paragraph 18 that…defendant had begun interviewing a female candidate to replace Mr. Starnes prior to his termination.").) That ThredUP had interviewed a female candidate for Starnes's position *before* terminating him (a fact the Court must accept as true) raises at least a plausible inference of sex-based discrimination at this stage of the litigation. This fact distinguishes the instant case from other reverse discrimination cases in which a plaintiff merely alleges that he was replaced by a woman. *Contra Swanson v. Salvin Dental Specialties Inc.*, No. 5:23-cv-00247, 2023 WL 3097644, at *3 (E.D. Pa. Apr. 26, 2023) ("In the Complaint, Swanson's only pertinent allegations regarding his gender are that (1) after Swanson's termination on January 12, 2022, he 'was replaced on January 13, 2022 by an approximately 35-year-old woman,' and (2) that Swanson's 'gender was a motivating favor in Defendant's decision to terminate him.' The fact that Swanson's replacement was a woman does not, on its own, suggest gender bias. The Court need not accept as true Swanson's bare, conclusory assertion that gender bias motivated Salvin Dental's decision to terminate his employment."); *Dixon v. Summit BHC Westfield LLC*, No. 4:19-CV-01267, 2020 WL 4347380 (M.D. Pa. July 29, 2020) ("The only relevant new allegation is that Dixon was replaced by a female. In cases alleging reverse discrimination, as Dixon is here, simple replacement by a person outside of the protected class does not by itself satisfy this prong of the *McDonnell Douglas* analysis.").

For these reasons, the Court finds that at this stage Starnes has raised a plausible inference of reverse discrimination and therefore denies ThredUp's motion to dismiss.

IV. **CONCLUSION**

For the reasons discussed above, the motion to dismiss is denied.